IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE  DIVISION

| | | |
|---|---|---|
| Carolina Care Plan, Inc., | ) | Civil Action No.:4:06-00792-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| Auddie Brown Auto Sales of | ) | |
| Florence, Inc., | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the court are: 1) Plaintiff's [Docket Entry #10] motion to remand; 2) Defendant's [Docket Entry #16] motion to dismiss; 3) Plaintiff's [Docket Entry #19] motion to dismiss counterclaim; 4) Intervenor's [Docket Entry #21] motion to intervene; and 5) Intervenor's [Docket Entry #27] motion to substitute party.

Plaintiff Carolina Care Plan, Inc., initiated this action in the Florence County Court of Common Pleas by complaint dated February 13, 2006.  In its complaint, Carolina Care Plan alleges that it is a health maintenance organization (HMO) which sold a group insurance policy to the defendant car dealership.  Plaintiff alleges the Defendant applied for and purchased a group health policy comprised of three documents, a policy, a certificate of coverage, and a Group Benefits Administrator Resource Manual for its eligible employees.  Plaintiff alleges these documents formed a contract between the parties.  The policy provides that an employee must work at least 30 hours per week to be eligible to receive benefits.  The policy further requires the employer to confirm the accuracy of the information about which employees are eligible for benefits on a monthly basis.  Ms. Gloria Follett was an employee of the defendant.  The Complaint alleges that Ms. Follett ceased to be an active employee in February of 2004 but that the employer continued to pay premiums for her and did not inform the HMO that she

no longer was working for the company. The HMO Plaintiff alleges it erroneously paid out almost Six-hundred fifty thousand ($650,000.00) dollars to medical providers for which Ms. Follet was not eligible. They allege causes of action premised upon the failure of the Defendant's to notify Plaintiff of the change in her status. The complaint alleges causes of action for breach of contract and negligent misrepresentation under state common law. The defendant removed the case to Federal Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 on March 13, 2006.

On April 3, 2006, the plaintiff filed a motion to remand on the basis that the face of the complaint does not invoke any federal statute. The defendant filed a memorandum in opposition to motion to remand on April 13, 2006. Defendant also filed a motion to dismiss on the same date. Defendant contends that the plaintiff's causes of action are completely preempted by ERISA, 29 U.S.C. § 1144. Also pending before the Court are a motion to intervene filed by Ms. Follett and a motion by the plaintiff to dismiss the counterclaim.

The court finds that the plaintiff's complaint is not completely preempted by ERISA; that no other ground of federal jurisdiction is present; and that the motion to remand is accordingly granted. The Court declines to rule on the motion to dismiss the counterclaim and the motion to intervene, since those motions should more appropriately be decided by the state court.

A civil action filed in a state court may be removed to federal court in matters "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether a plaintiff's claim arises under federal law, the "well-pleaded complaint rule" normally applies, wherein courts "look no further than the plaintiff's [properly pleaded] complaint in determining whether a

2

lawsuit raises issues capable of creating federal question jurisdiction under 28 U.S.C. § 1331." Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir.1996).  However, "when the federal statute completely pre-empts the state- law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  Beneficial National Bank, Inc., v. Anderson, 539 U.S. 1, 8 (2003); Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 187 (4th Cir. 2002).

The Employee Retirement Income and Security Act (ERISA) "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v Delta Airlines, Inc., 463 U.S. 85, 90 (1983).

> As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.". . . Prominent among these safeguards are three provisions of particular relevance. . . : §514(a), 29 U.S.C. §1144(a), ERISA's broad pre-emption provision; §510, 29 U.S.C. §1140, which proscribes interference with rights protected by ERISA; and §502(a), 29 U.S.C. §1132(a), a 'carefully integrated' "civil enforcement scheme" that "is one of the essential tools for accomplishing the stated purposes of ERISA."

Ingersoll-Rand Company v. McClendon, 498 U.S. 133 (1990), citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987).

ERISA's preemption provision, §  514(a), 29 U.S.C. § 1144(a) provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

Section 502(a) of ERISA, 29 U.S.C. § 1132(a) provides:

> A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan.

3

The Fourth Circuit has differentiated between the doctrine of ordinary or conflict preemption and complete preemption. Under ordinary preemption, state laws that conflict with federal laws are preempted and preemption is asserted as a defense to the plaintiff's lawsuit in state court. These cases are not generally removable to federal court. The doctrine of complete preemption, on the other hand, provides an independent basis of federal jurisdiction and the state law claims are converted to federal claims. "When complete preemption exists, the plaintiff simply has brought a mislabeled federal claim which may be asserted under some federal statute." Sonoco Products Co. v Physicians Health Plan, Inc., 338 F.3d 366, 371 (4th Cir. 2003). In order for complete preemption to apply, three elements must be shown:

> (1) plaintiff must have standing under § 502(a) to pursue its claim; (2) (its) claim must fall 'within the scope of an ERISA provision that [it] can enforce via § 502(a)'; and, (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

Id., citing Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482 (7th Cir. 1996).

"The only parties entitled to pursue an ERISA claim under § 502(a)(3) are 'participants', 'beneficiaries', and 'fiduciaries'." Id. at 372. In the case at bar, the plaintiff is clearly not a participant or beneficiary of the plan. The parties disagree as to whether it is a fiduciary and thus has standing under § 502(a) to pursue a claim under ERISA.

The plaintiff contends that the policy states: "When the Enrolling Group [the employer] purchases the Policy to provide coverage under a benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., we are not the plan administrator or named fiduciary of the benefit plan, as those terms are used in ERISA." (Exhibit A to plaintiff's Complaint, p. 60.) Plaintiff also cites case law in support of its position that its claims should be remanded.

4

Defendant agrees that the plaintiff is not the "plan administrator", as that role is held by the defendant. It also agrees that the plaintiff is not a "named fiduciary". However, the defendant contends that ERISA defines fiduciary as follows:

> A person is a fiduciary with respect to a plan **to the extent** (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) **he has any discretionary authority or discretionary responsibility in the administration of such plan.**

Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992), citing 29 U.S.C. § 1002(21)(A)(emphasis added).

Defendant contends that, under the terms of the plan, the plaintiff has the discretion to interpret benefits and terms and conditions under the policy and make factual determinations related to the policy and its benefits and cites the Court to the policy which was attached as exhibit A to plaintiff's complaint, p. 61, which provides:

**Interpretation of Benefits**
We have sole and exclusive discretion to do all of the following:
•     Interpret Benefits under the Policy.
•     Interpret the other terms, conditions, limitations and exclusions set out in the Policy, including this Certificate of Coverage and any Riders and Amendments.
•     Make factual determinations related to the Policy and its Benefits.

The Fourth Circuit has held that the decision whether an entity is acting as a fiduciary is not "an all or nothing concept." Coleman, 969 F.2d at 61. "However, the inclusion of the phrase 'to the extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular

5

activity at issue." Id. The discretionary authority relevant to the determination of whether an entity is a fiduciary is allocated by the plan documents. Id., citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). In Coleman, the Fourth Circuit held that the plan documents specified that the employer would handle notice and recordkeeping for the plan and would report changes in eligibility status to the insurer. Therefore, the insurer was not liable to a plan beneficiary for breach of fiduciary duty in connection with termination of a policy for nonpayment of premiums by the employer.

In the case at bar, the Court concludes that the HMO was not performing a fiduciary function in connection with the decision of whether an employee was an active employee who was working more than 30 hours per week. It relied solely on the employer, who was the plan administrator, to maintain information and provide to it as to which employees worked sufficient hours to qualify for coverage under the policy. (See GBA Resource Manual, Section 4, attached to Complaint.) Therefore, although the plaintiff may have served as a fiduciary as to benefits decisions, and actions relating to those decisions would be preempted by ERISA, its functions relating to the instant action were not fiduciary in nature. Therefore, complete preemption would not apply.

The Court finds the case analogous to *Sonoco* which was an action by the employer against the group health insurer, PHP, who was the predecessor to Carolina Care Plan, the plaintiff in the case at bar. The complaint alleged causes of action for breach of contract and breach of contract accompanied by fraudulent act based upon the cancellation of the policy. The District Judge denied the motion to remand, but the Fourth Circuit reversed on the basis that the employer lacked standing to assert claims under ERISA's civil enforcement provision and held the action was not completely preempted. The Court reasoned that the employer was not a participant or beneficiary under § 502(a)(3) and that it therefore would not be considered a fiduciary under ERISA unless it was a fiduciary under ERISA and

6

it was "asserting the breach of contract claims in its fiduciary capacity." *Id.*, 338 F.3d at 372. The Court explained that a plan sponsor such as Sonoco "may function as an ERISA fiduciary in some contexts, but not in others," citing *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002). "Where, however, a plan sponsor's claims in a lawsuit relate solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants and beneficiaries, it is not acting as an ERISA fiduciary under 29 U.S.C. § 1002(21)(A)." *Id.*, 338 F.3d at 373.

The United States Supreme Court has held that provisions of HMO documents are not ERISA plans as such but that the agreement between an HMO and an employer may provide certain elements of a plan by setting out rules under which beneficiaries are entitled to care. Pegram v. Herdrich, 530 U.S. 211 (2000). Although an HMO is not an ERISA fiduciary merely because it has discretionary authority over its own HMO business, it may be considered a fiduciary within the meaning of ERISA if it administers the Plan. However, a mixed eligibility and treatment decision made by HMO is not a fiduciary act and cannot serve as basis for breach of fiduciary duty claim under ERISA.) Pegram, 530 U.S. at ____. As in Pegram, in the case at bar, the HMO was not acting as a fiduciary with regard to the recordkeeping function of determining which employees were working at least 30 hours for the company.[1]

The Court's conclusion that the causes of action in the instant case are not completely preempted is also supported by the analysis of other circuits. "[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities-the employer, the plan, the plan fiduciaries, and the beneficiaries- than if it affects relations between one of these entities and

---

[1] The Fourth Circuit noted in Sonoco that a contract of insurance sold to a plan is not itself the plan and that the contract allegedly breached was not the plan itself but a contract to provide insurance coverage.

7

an outside party, or between two outside parties with only an incidental effect on the plan." <u>Memorial Hospital Sys. v. Northbrook Life Ins. Co</u>., 904 F.2d 236, 249 (5th Cir. 1990).  <u>See also</u>, <u>General American Life Insurance Co. v. Castonguay</u>, 984 F.2d 1518 (9th Cir. 1993) ("But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity-for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords for whom it leases office space.  State law is allowed to govern these relationships, because it's much less likely to disrupt the ERISa scheme than in other situations.  Moreover, if these relationships were governed by federal law, federal courts would have to invent a federal common law of contracts, torts, property, corporations-something that would run against the grain of our federal system..."); <u>Union Health Care, Inc. v. John Alden Life Insurance Co</u>., 908 F.Supp. 429 (S.D. Miss. 1995) (Breach of contract claim by employer against health plan administrator and excess risk insurer not preempted. Administrator failed to timely notify insurer of excess claims, and court found that claim dealt, not with administrator's duties to plan as to which it had a fiduciary relationship, but related solely to administrator's duties in connection with the reinsurance contract.)

The defendant alternatively argues that complete preemption applies due to its counterclaim relating to COBRA.  However, the Supreme Court  has "decline[d] to transform the well-pleaded complaint rule into the well-pleaded complaint or counterclaim rule." <u>Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.</u>, 535 U.S. 826, 832 (2002).

<u>**Conclusion**</u>

For the reasons stated above, Plaintiff's [Docket Entry #10] motion to remand is **Granted** and Defendant's [Docket Entry #16] motion to dismiss based on preemption is **Denied.**  Plaintiff's request for attorney fees and costs is **Denied.**  The case is remanded to the Florence County Court of Common

8

Pleas, where the state court may rule upon the Plaintiff's [Docket Entry #19] motion to dismiss counterclaim, Intervenor's [Docket Entry #21] motion to intervene, and 5) Intervenor's [Docket Entry #27] motion to substitute party.

> **AND IT IS SO ORDERED**.

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, S.C.
March 31, 2007

9